## RHODES *et al. v.* WILLIAMS.

1. By the act of 1866 (Civil Code of 1910, § 2178) it was declared that persons of color who were living together on the ninth day of March, 1866, as husband and wife, sustained that relation to each other, provision being made in case a man had two or more reputed wives, or a woman two or more reputed husbands.
2. By the same act mentioned in the last headnote (Civil Code of 1910, § 2180) every colored child born before the ninth day of March, 1866, was declared to be the legitimate child of its mother; but such child was declared to be the legitimate child of its colored father only when born within what was regarded as a state of wedlock, or when the parents were living together as husband and wife.
3. Under the provision last stated, if a negro woman had two children born to her before the ninth day of March, 1866, by different fathers, both were by the act above mentioned made her legitimate children, although one might be the legitimate child of its father, and the other the illegitimate child of a different man. In that event they were capable of inheriting from each other, being legitimate on the mother's side.

4. If a negro woman had two children born prior to the ninth day of March, 1866, and one of them was legitimate on his father's side, and inherited property from his father, but his half sister on his mother's side died before he died, leaving an illegitimate daughter, such daughter would not inherit the estate of her mother's half brother, by representation under her mother.

APRIL 16, 1915.

Ejectment. Before Judge Littlejohn. Sumter superior court. July 31, 1914.

Rebecca Rhodes and others brought ejectment against Celia A. Smith as tenant in possession, and Mamie Williams as claimant of the title. The latter defended. Both the plaintiffs and the defendant claimed to have derived title under Marshall Swearengen Sr., colored, who died intestate. The plaintiffs claimed that he died leaving no wife or legitimate child and no father or mother, and that they were his nieces and nephews, and therefore inherited from him. The defendant claimed that the intestate left a legitimate son, Marshall Swearengen Jr.; that the mother of such son also had a daughter named Susie, who was his half sister; and that the defendant is the daughter of Susie. The mother of Marshall Jr. and Susie died many years ago. Marshall Swearengen Jr. died about two years before the suit was brought. Susie also died prior to the bringing of the suit, but whether before the death of Marshall Jr. does not clearly appear. Apparently she died before her half brother. The evidence indicated that Mamie Williams, the defendant, was the illegitimate daughter of Susie; and that Susie was older than her half brother. The exact dates of the births of Susie and her half brother were not shown, but the evidence indicated that they were born either during the Civil War which came to an end in 1865, or shortly before its commencement. It also tended to show that Susie was born out of wedlock. It was conflicting as to whether Marshall Jr. was the legitimate son of Marshall Sr. The jury found for the defendant. The plaintiffs' motion for a new trial was overruled, and they excepted.

*J. B. Hudson* and *James A. & John A. Fort,* for plaintiffs.
*Wallis & Fort,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) Marshall Swearengen Sr., a negro, owned the property in dispute at the time of his death. If Marshall Swearengen Jr. was the legitimate son of Marshall Sr. when the latter died, then the son inherited the

land from his father, there being no other heirs. By the act of 1866 (Civil Code of 1910, § 2178) it was declared that persons of color living together on the 9th day of March, 1866, as husband and wife, sustained that relation to each other, provision being made in case a man had two or more reputed wives or a woman two or more reputed husbands. If, then, Marshall Swearengen Sr. and Mary Ann French were the father and mother of Marshall Swearengen Jr., and were living together on March 9th, 1866, as husband and wife, the law declared them to be such. If the child was born before that date within what was regarded as a state of wedlock, or when his parents were living together as husband and wife, he was the legitimate son of his father. Civil Code (1910), § 2180. The first step, therefore was to determine whether Marshall Jr. was the legitimate son of Marshall Sr. If the boy was legitimate and inherited the property, the next question is whether it passed by inheritance to the present defendant.

Marshall Jr. had a half sister, Susie, each having the same mother, but not the same father. She was older than he, and the evidence indicates she was illegitimate at birth. It does not distinctly appear when she died. It may be inferred from the pleading and evidence that her death occurred before that of her half brother. But as it is not entirely certain, the matter will be considered in view of either possibility. By the act of 1866, to which reference has already been made, every colored child born before the ninth of March, 1866, was declared to be the legitimate child of its mother. Therefore the girl Susie, having been born before that date, was the legitimate child of her mother. The boy Marshall, if born before that date, was also the legitimate child of his mother. Thus, each of them being the legitimate child of the same mother, they were legitimate half brother and sister on the mother's side; and if one of them died leaving real estate, and without descendants, the other could inherit the realty left by the deceased. Accordingly, if Marshall Jr. was the legitimate son of Marshall Sr. and inherited the property in controversy from the latter, and if he died before his half sister, Susie, she inherited from him. The evidence tended to show that the defendant, Mamie Williams, was the illegitimate daughter of Susie. If the defendant's mother became the owner of the lot by inheritance before her death, the illegitimacy of the defendant would make no difference, as, under

the statute, she could inherit from her mother. Civil Code (1910), § 3029.

If the mother of the defendant died before her half brother, Marshall Jr., then the legitimacy or illegitimacy of the defendant would be an important matter in determining the inheritance. At common law a bastard could not inherit. Such right of inheritance as it has is given by statute. Our statutes have to some extent modified the common law on this subject. Civil Code (1910) § 3029, which was also contained in earlier codes, and which was derived from previous legislative acts, declares, that bastards have no inheritable blood, except that given to them by express law; but that they may inherit from their mother, and from each other, children of the same mother, in the same manner as if legitimate; that if a mother have both legitimate and illegitimate children, they shall inherit alike the estate of the mother; that if a bastard die, leaving no issue or children, his mother, brothers, and sisters shall inherit his estate equally; and that, in distributions under this law, the children of the deceased bastard shall represent the deceased parent. By the act of 1859, certain provisions were made in regard to inheritance by legitimates from illegitimates. Civil Code (1910), § 3030. By another act also passed in 1859, it was provided that a former act, which restricted the distribution of the estate of an intestate among collaterals to the children of the brothers and sisters of such deceased, should be so amended as to extend to and embrace the children of the intestate's nephews and nieces. The law as thus amended was codified, and will now be found in Civil Code (1910) § 3931, par. 5. It is there declared that brothers and sisters of the intestate stand in the second degree, and inherit, if there is no widow, or child, or representative of child; and that the children or grandchildren of brothers and sisters deceased shall represent and stand in the place of their deceased parent; but that there shall be no representation further than this among collaterals. This provision forms a part of the general rules of inheritance declared in the code. The words "children" and "grandchildren," as used in statutes, generally refer to legitimate descendants, unless there is something which shows a contrary intent on the part of the legislature. *Floyd* v. *Floyd*, 97 *Ga.* 124 (24 S. E. 451). In *Houston* v. *Davidson*, 45 *Ga.* 574, it was held that the provision of the act of 1859 that representation among collaterals should ex-

tend to the children and grandchildren of brothers and sisters was so far applicable to the law which allowed inheritance from a bastard by his brothers and sisters, or, if they be dead, by their children, as to extend the representation among bastards to children and grandchildren of brothers and sisters inheriting from an illegitimate. That decision was dealing only with the distribution of the estate of an illegitimate child, and the right of representation under the law covering that subject. It was not dealing with the distribution of the estate of a legitimate child, or any claim to inheritance from him by an illegitimate descendant of his sister or brother. As any right to claim under Marshall Jr. must rest upon his having been legitimate, or having been legitimated by the act of 1866, and thus having inherited the property from Marshall Swearengen Sr., the case is not one involving inheritance by one illegitimate child, or his children or grandchildren, from another. Accordingly, that decision does not control this case.

From what has been said it will be seen that if Marshall Swearengen Jr., as being a legitimate child of Marshall Swearengen Sr., inherited the property in controversy from the latter, and if his half sister, Susie, died before him, leaving the defendant as her illegitimate daughter, the defendant could not inherit the property from Marshall Jr.

The request to charge which was refused was not adjusted to the facts of the case, and was properly declined. So also the complaint of an omission to charge, contained in the second ground of the amended motion, was without merit. But the court did not anywhere instruct the jury on the subject of the defendant's illegitimacy and lack of inheritable blood, if her mother died before the half brother of the latter. Complaint was made that the court erred in omitting to charge that an illegitimate child has no inheritable blood, save that expressly conferred by statute. As the evidence is not entirely clear in some respects, we will not hold as matter of law that the defendant was an illegitimate child, that her mother died before the death of Marshall Swearengen Jr., and that therefore the defendant took nothing by inheritance. But this important question should not have been entirely omitted from consideration in instructing the jury.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*