## PRICE *v.* BROWN.

1. Where a plaintiff sought to recover damages for alleged trespasses upon land, and to enjoin further trespasses thereon, and his title to the land was alleged to be by virtue of his being the heir of a deceased person, the burden was upon him to make out his case, and as a part thereof to show that he was the heir of such decedent.
(*a*) If the plaintiff showed that he was the heir of the decedent, but there was also another heir, this might affect the extent of the recovery, or the question of parties.
(*b*) Where, in a case of the character indicated in the preceding headnote, it appeared that the person alleged to be the deceased father of the plaintiff and the plaintiff's mother were colored persons and had been slaves, and that the plaintiff was born prior to March 9, 1866, in order to establish his heirship it was incumbent upon him to show that he was the legitimate son of his father, under the Civil Code (1910), § 2180.
2. By the Civil Code (1910), § 2180, every colored child born before the ninth day of March, 1866, is declared to be the legitimate child of his mother; but such child is the legitimate child of his colored father only when born within what was regarded as a state of wedlock, or when the parents were living together as husband and wife.
(*a*) There was no merit in the exception to a portion of the charge of the court which was in substantial accord with the section just cited.
3. It was error for the court, at the conclusion of the testimony of the plaintiff, to state, in the presence of the jury: "Under the evidence, so far as plaintiff is concerned, he is bound by his evidence. Under the evidence, both he and the other are not both legitimate children. It does not appear which one is. They both are not. Whichever one is would inherit all the property, and the other none." The testimony of the plaintiff did not exclude the possibility of the legitimacy of the other child to which reference was made. The court should not have thus enunciated a rule based upon the plaintiff's testimony, which it did not authorize, but should have given the jury proper instructions upon the entire case as made by the pleadings and evidence.
(*a*) It was recited in the motion for a new trial, which was duly certified, that nowhere in the entire charge was reference made to the above-quoted statement, and that the jury went into the consideration of the case with this rule to govern them in their deliberations.

JULY 8 1915.

Equitable petition. Before Judge Conyers. Camden superior court. May 9, 1914.

W. H. Price, individually and as temporary administrator of Henry McPrice, brought an equitable action in the superior court of Camden county against E. Brown, alleging in substance as follows: Jack Price, deceased, was at the time of his death the true and lawful owner and in possession of a described tract of land. The plaintiff and Henry McPrice, deceased, were the only heirs at law of Jack Price, and the plaintiff is the only heir at law of Henry McPrice and also his temporary administrator. The administrator of the estate of Jack Price, deceased, consents to the bringing of this action. After the death of Jack Price an execution against Henry McPrice was levied upon the land described, and at the sheriff's sale S. C. Townsend and J. H. Rudulph became the purchasers. Henry McPrice, desiring to redeem or to repurchase the land, entered into an agreement with E. Brown to have Townsend and Rudulph convey the land to Brown, for the latter to lease the turpentine timber to Davis & Kicklighter at $50 per thousand boxes, and to apply the proceeds as a payment on the purchase-price, which was $400, and that Brown should loan to Henry McPrice the balance at eight per cent. interest, and hold the deed to the land until the money was repaid with interest. In furtherance of this agreement Kicklighter advanced $100 and took the lease, and Brown paid the remainder of $300. Townsend and Rudulph conveyed all their right, title, and interest to Brown. Davis & Kicklighter have since paid to Brown the balance due on the lease, reasonably amounting to $200. Henry McPrice has paid several sums of money and sold a considerable amount of timber to Brown, to be applied on the debt. Brown refuses to disclose the amount of such sales, but it is charged that it is sufficient to liquidate the entire indebtedness. Since the death of the plaintiff's brother, Henry McPrice, Brown refuses to disclose the amount paid to him, and is fraudulently claiming to be the owner of such land, and has entered upon it and cut and removed logs and cross-ties to the amount of $500. He is now continuing to cut and remove them, and has expressed his intention of further trespassing. As heir of Jack Price the plaintiff is the owner of one undivided half interest in the land, which could not be conveyed by any sale under a fi. fa. against Henry McPrice; and as the only heir of Henry McPrice,

he is the owner of any equity which belonged to the latter at the time of his death, and as such, and as temporary administrator of Henry McPrice, he is entitled to recover it. The prayers were, for an injunction against Brown to prevent him from cutting or removing any timber from the land until the final trial; that he be required to account for all payments made to him by Henry Mc-Price, and for all timber cut and removed from the land; that, if this be found to exceed the indebtedness of Henry McPrice to Brown, the plaintiff have a judgment therefor; that the title to the land be decreed to be in the plaintiff; that if there should be any balance due to Brown, a decree be so molded as to provide for its payment from the proceeds of the land, and the plaintiff should be authorized to sell it under order of the court; and that if the jury should find that Brown is the owner of one undivided half interest in the land, the court by proper order provide for a partition of it; and for general relief.

It is unnecessary to set out the answer further than to state that it admitted that Henry McPrice was an heir at law of Jack Price, deceased, but denied the remainder of the paragraph in which it was alleged that the plaintiff was also an heir of the deceased and temporary administrator on the estate of Henry McPrice. It was alleged that the land was levied on under an execution against Henry McPrice, and was sold to S. C. Townsend and J. H. Rudulph, and that they sold it to Brown. It was further alleged that the sale to Brown was an absolute sale, without any agreement with Henry McPrice as to redeeming or repurchasing it. The turpentine and timber lease to Davis & Kicklighter was admitted, but it was denied that there was any agreement as to the application of the proceeds thereof.

By amendment the plaintiff struck from the petition the allegation that Henry McPrice was an heir of Jack Price, and alleged that the plaintiff was the only heir at law of Jack Price, and as such was entitled to recover the entire property described.

The jury found for the defendant. The plaintiff moved for a new trial, which was refused, and he excepted.

*S. C. Townsend,* for plaintiff.

*Emmett McElreath* and *John J. Moore,* for defendant.

Lumpkin, J. (After stating the foregoing facts.)

1.  The presiding judge instructed the jury: "You will first inquire as to the birth and legitimacy of the plaintiff, W. H. Price. If he was not the son of Jack Price,—the burden is upon him, I should state, to establish his right to recover, and to establish all the facts necessary to make up his right to recover, by a preponderance of evidence." Error was assigned on this charge. There was no error in it. The plaintiff first alleged that he was one of two heirs left by Jack Price. By amendment he alleged that he was the only heir. The answer did not admit that he was an heir at law. The evidence showed that the parties were persons of color, Jack Price and the mother of the plaintiff and the mother of Mc-Price having been slaves; that introduced by the plaintiff tending to show that he was born in 1861 or 1862, and that McPrice was born about six months later. It seems that a conveyance was made to Jack Price in 1865, so that he was then in life. During the existence of slavery in this State, slave marriages were not binding, and their offspring was not legitimate. Their marital status and the legitimacy of their children was one dependent upon statutory enactment. On March 9, 1866, an act was passed which declared that "persons of color, now living together as husband and wife, are hereby declared to sustain that legal relation to each other, unless the man shall have two or more reputed wives, or a woman two or more reputed husbands. In such event, the man, immediately after the passage of this act by the General Assembly, shall select one of his reputed wives, with her consent; or the woman one of her reputed husbands, with his consent; and the ceremony of marriage between these two shall be performed. If such man thus living with more than one woman, or such woman living with more than one man, shall fail or refuse to comply with the provisions of this section, he or she shall be prosecuted for the offense of fornication, or fornication or adultery, or fornication and adultery, and punished accordingly." Acts 1865-1866, p. 240. On the same day another act was approved which declared, that among persons of color the parent should be required to maintain his or her children, whether legitimate or illegitimate; that children should be subject to the same obligations in relation to their parents as those which existed in relation to white persons; and "that every colored child heretofore born is declared to be the legitimate child of his mother, and also of his colored father, if acknowledged by such

father." Acts 1865-1866, p. 240. On December 12, 1866, another act was approved. This act contained the following provision: "Section third of the above-recited act [that is the act of March 9, 1866] shall be so construed as to apply only to such children as were born within what was regarded as a state of wedlock, or when the parents were living together as husband and wife." Acts 1866, p. 156. Another act, approved December 13, 1866, declared valid marriages theretofore celebrated by ordained colored ministers of the gospel between freedmen and freedwomen, and authorized colored ministers of the gospel to celebrate marriages between freedmen and freedwomen, or persons of African descent only. These acts are now codified in sections 2178 and 2180 of the Civil Code of 1910. The latter section reads as follows: "Every colored child born before the ninth day of March, 1866, is hereby declared to be the legitimate child of his mother; but such child is the legitimate child of his colored father only when born within what was regarded as a state of wedlock, or when the parents were living together as husband and wife."

Where, as in the present case, the plaintiff, a colored person born in this State prior to March 9, 1866, claimed to inherit from his father as the legitimate child of the latter, and the fact of his being an heir was put in issue by the pleadings, the burden was on him to show that he was the legitimate son of his father. The provision of the act of that date in regard to the recognition of a colored child by its father was omitted from the act of December 12, 1866; and in the case at bar the father did not die between those dates after a recognition of the plaintiff as his child. Hence the decision in *White* v. *Ross*, 40 *Ga.* 339, does not apply.

2. Exception was taken to the charge which was substantially in accord with section 2180 of the Civil Code. The plaintiff contended that if the father and mother recognized their relation as that of husband and wife prior to March 9, 1866, and the father acknowledged the child as his, the child would be the legitimate child of both parents, whether the state in which the father and mother lived was recognized by any one else as a state of wedlock or not. But this contention is not in accord with the statute. The expression, "what was regarded as a state of wedlock," does not mean so regarded merely by the man and woman.

3. Error was assigned because the court stated in the presence

of the jury, at the conclusion of the testimony of the plaintiff, as follows: "Under the evidence, so far as the plaintiff is concerned, he is bound by his evidence. Under the evidence, both he and the other are not both legitimate children. It does not appear which one is. They both are not. Whichever one is would inherit all of the property, and the other none. I am not undertaking to say which was the legitimate child; but, under his evidence, both could not be legitimate children, and whichever one was would inherit all the property." It was assigned as error that these remarks were calculated to mislead the jury, as nowhere in the entire charge of the court were they referred to or retracted, and the jury went into the consideration of the case with this rule given by the court to govern them in their deliberations. Error was also assigned on this statement, because it was an intimation to the jury as to what had or had not been proved, and because the evidence of the plaintiff did not warrant the enunciation of any such rule. This exception was well taken. The presiding judge should not have singled out the evidence of one witness, although the plaintiff, and have stated to the jury that he was bound by such evidence, and under it he and McPrice were not both legitimate children. This expressed an opinion on the facts. Under the Civil Code (1910), § 2180, it was possible for a colored man and woman to have been living together prior to March 9, 1866, as husband and wife, and to have had a child born to them, which would thus be the legitimate child of both the father and mother. It was further possible for them to have separated and for the same man, prior to the date mentioned, to have lived with another woman in the relation of husband and wife, and to have had born another child, which would also be legitimate. It may be anomalous that a colored father might have had two legitimate children by different mothers prior to March 9, 1866, by having lived with each of them as his wife at the time when her child was born. But the status of slave marriages and the legitimacy of the offspring therefrom is dependent upon the statute. We do not intimate that there was any such state of facts in this case as just above mentioned. But the testimony of the plaintiff himself did not exclude such a possibility. It is not clear just what the presiding judge meant by the expression, "so far as the plaintiff is concerned, he is bound by his evidence. Under the evidence, both

he and the other are not both legitimate children." But is was error, at the close of the testimony of the first witness in the case, for the court to hold that he, being the plaintiff, was bound, and to state in the presence of the jury the rule which was announced. The court should have waited until the close of the evidence, and have given instructions upon, the whole case. It was stated in the motion, to which the judge certified, that no correction was made in regard to this remark. The case should be retried upon proper instructions. On the general subject see *Rhodes* v. *Williams,* 143 *Ga.* 342 (85 S. E. 105).

Under the facts of the case and the statute above quoted, there was no other error requiring a reversal.

　　　　　　　　*Judgment reversed. All the Justices concur.*