## RUDULPH, administrator, *et al.* v. BROWN.

1. While the original suit was one brought by the administrator for the recovery of the premises in dispute as the property of his intestate, the character of the suit was changed into a controversy between the intervenors and the defendant for the recovery of the land in dispute, by reason of the intervention of the intervenors and the amendment filed by the administrator, in which he alleged that the intervenors claimed to be the owners of this land, and that he desired the respective rights of the intervenors and the defendant thereto be determined by the court for his protection, so that he might be legally discharged and relieved as administrator.

2. Where nephews and nieces of the intestate, being the intervenors in the case referred to in the above headnote, claim title to the lands of the intestate as the sole heirs at law of their mother, who, they allege, was the sole heir at law of the intestate, their claim of title would be defeated when it was shown that the intestate died leaving a legitimate son, who was one of his heirs at law, without proof that he was the sole heir at law of the intestate.

3. An instruction that if the jury found that a son of the intestate was the only heir of the intestate at the time of the sheriff's sale of the land in dispute as the property of said son, under which sale the defendant claims title, the plaintiff would not be entitled to recover against the defendant, was not erroneous for the reason assigned, that it confined the existence of such heirship to the date of the sale and not to the death of the intestate, as such son, if an heir at law of the intestate

---

Descent and Distribution 18 C. J. pp. 831, n. 65, New; 875, n. 78; 876, n. 6, New.

Trial 38 Cyc. pp. 1619, n. 38; 1698, n. 20; 1707, n. 98; 1750, n. 16; 1751, n. 21.

at the time of the sale, must necessarily have been such at the time of the death of the intestate.

4. The court did not err, as against the plaintiffs, in instructing the jury that the real question in the case for their determination was whether Henry Mack Price was the legitimate child and only heir at law of Jack Price, the intestate.

5. Failure of the court to charge upon the burden and preponderance of the evidence, in the absence of a timely request therefor, will not require the grant of a new trial.

6. The court did not err in omitting to give to the jury the instruction set out in the sixth division of this opinion, which the plaintiff and intervenors contend should have been given, though not requested, for the reasons, (1) that there was no timely request for such charge, and (2) because such instruction does not contain a correct principle of law applicable under the facts of this case.

7. The verdict is supported by the evidence.

No. 4995. November 16, 1925.

Equitable petition. Before Judge Reed. Camden superior court. June 24, 1925.

This case has been twice before this court, first under the name of *Rudulph* v. *Brown,* 150 *Ga.* 147 (103 S. E. 251), and second, under the name of *Brown* v. *Glover,* 156 *Ga.* 640 (119 S. E. 607). The reports of those cases will give a full history of this litigation, including the pleadings and the evidence on the former trials. The amendment to the petition, referred to in the report of this case when here last, in which the plaintiff alleged that the intervenors were the sole heirs at law of Sarah Pinkney, who was the sole heir of Jack Price, and in which the plaintiff desired the respective rights of the parties determined by the court for his protection, does not appear in the present record. When the judgment was reversed the last time the case was again tried. At this trial the pleadings of the original plaintiff, of the intervenors, and of the defendant were the same as when the case was here the last time; and a substantial abstract thereof appears in *Brown* v. *Glover,* supra. On the last trial the plaintiff and intervenors introduced the order of the court of ordinary, authorizing the administrator to sell the land in dispute for the purpose of distribution and paying the expenses of administration.

Robert Glover testified for the plaintiff and intervenors, as follows: I knew Jack Price in his lifetime. He lived upon the land involved in this suit. My mother was his sister. He had no other relatives except my mother and her children, so far as I know. Have heard my mother and Uncle Jack discuss the relationship.

He said that he was never married. This was about a year before he died. My mother asked him if he was going to live always and never get a wife, and he said that he was never going to get married. Knew Henry Mack Price. Never knew anything about his mother. Henry was quite a little fellow when I first knew him. He lived with his father, Uncle Jack. Uncle Jack said Henry was his son, but that he never had been married to Henry's mother. My mother died in Fernandina. She left three children, Josephine, Wilhemina Holliday, and myself. Her name was Sarah Pinkney. Her husband died before she did. (Cross-examination) Jack Price lived with Henry's mother; I don't know when. Henry Mack Price was living with Jack Price, and lived on the land after Uncle Jack died. If my mother made any claim to this land while Henry was living, I didn't know it.

S. C. Townsend for plaintiff and intervenors testified: I made an examination in the probate court of Nassau County, Florida, at Fernandina, and found no record of any administration on the estate of Sarah Pinkney, and no record of any will.

The defendant introduced in evidence a deed dated January 25, 1911, from J. H. Rudulph and S. C. Townsend to Ezekiel Brown, conveying the property in dispute; a deed from the sheriff of Camden County to J. H. Rudulph and S. C. Townsend, conveying the same property; and the brief of evidence on the former trial of this case, containing an admission by the plaintiff that a valid execution was issued from the city court of St. Marys, Georgia, levied upon the property in dispute as the property of the defendant in fi. fa., Henry Mack Price, and that the same was sold by the sheriff under said execution, and bid in by J. H. Rudulph and S. C. Townsend, who had quitclaimed their right, title, and interest in the same to the defendant, E. Brown.

E. Brown for himself testified: I know the property in dispute. Knew Jack Price in his lifetime. He lived on this land until his death. He died 25 or 35 years ago. Knew Henry Mack Price. He lived on this land with his father until his father died. It has been 15 or 18 years since Jack Price died. It has been 12 or 13 years since Henry died. Was present on the former trial of this case when D. B. Kooner testified. He is dead. I recall the substance of his testimony. Kooner testified that Jack Price was the father of Henry Mack Price, that Henry Mack Price's mother

and Jack Price were living together as husband and wife when Henry Mack Price was born, that they were married during the war time, and were separated by the white folks, who took her to Florida. After they were freed he went after her. She was living with another man, and refused to come back with him. She had two children, and he brought one back with him. Heard Kooner testify on the former trial of the case that she was dead. Was never served with any notice of any application by the administrator in this case to sell this land. (Cross-examination·) Counsel for plaintiff read from the testimony of Kooner as follows: "I knew Jack Price in his lifetime. He belonged to my father. When he died he had one child that stayed here. She took them and went to Florida. When he found her she had two, and she refused to come back with him, and was living with another man, and he brought one back with him. The mother took one, before the war, when she was carried off. Don't know what became of her. She left here in '62. Don't know whether anybody has ever heard from her since she left. Didn't know where she went. Am well acquainted with her mistress, and she says she didn't know what became of her. Henry Mack Price's mother belonged to an estate. When the property was divided she fell to the youngest girl, who married, and her husband carried her to Florida. She left from right close to Folkston. I was about 14 years old, and stayed right in the community until I was about 23 or 24 years old. Never saw or heard anything from her there as long as I stayed. Don't know if Jack Price ever heard from her any more. I knew everybody there in that whole community. Jack Price lived right about the country until he died. I was a small boy when my father bought them. He stayed right on the place until '67. Haven't heard anything from this woman and the other child since they left here." After counsel completed reading the above testimony of Kooner, the defendant testified: This is part of his testimony; you didn't read it all, where he went off to Florida and came back and said she was dead. I heard him testify that he went off there looking for her, and found out that she was dead. I do not know what his testimony was, word for word, each time, but there was not much difference. He testified on the last trial of this case that she was dead. Do not know which time; it has been tried so much. If you (referring to counsel for plaintiff)

and Howard hadn't destroyed the records that were there, that is the thing that we wanted, we wanted that part. This that you have got there is the part that you wanted, but there was another part to that. It is missing. On the former trial of this case I testified that I heard Kooner testify as follows: "I heard D. B. Kooner testify on the trial of this case before. He is dead now. I recall his testimony. I can recall the substance of all he testified. He testified that Jack Price and this woman were married by a preacher, and they lived together and had two children, but he did not claim one of the children. This woman was carried off to Florida, and after the war he went to her and she refused to come back, and he brought Henry Mack Price. He testified he knew Jack Price was married to Henry Mack Price's mother by a preacher, and that Henry Mack Price was the issue of that marriage. Mr. Kooner testified that the woman took both children to Starke, Florida. Mr. Kooner testified he went to Starke, Florida, looking for that boy, just after the civil war. He testified that they had never been heard from since. That's what he testified." He testified as above one time, but he testified more than one time. If I didn't testify before that he said one of the boys was dead, I meant to.

E. J. Goolsby for the defendant testified: I knew Jack Price. He lived about a mile west of Coleraine, in Charlton County, from 1868 to 1890. Knew Henry Mack Price. Heard Jack Price say time and time again that he was the only child he had living; that he had two, but that when they went to Florida he only had one and he brought him back home. Heard him say to my mother that he had a wife during the war, and that if he didn't get her back that he would never marry any more. Said she had married another man and wouldn't come back with him. (Cross-examination) Never heard Jack Price say what his wife's name was. Knew Bill Price. Never heard Jack Price claim that he had but two children. Never heard him say anything about Bill Price being his son. Andrew Jackson Price was the one supposed to be dead. Knew D. B. Kooner. "He was a drifter."

Polly Brown for the defendant testified: I reckon I am about 75 years old. Knew old man Jack Price since 1855. He was a slave, and belonged to Mr. Kooner, when I knew him. I have heard old man Jack Price say that Henry Mack Price was his son,

I have heard him say that he and Henry's mother were lawfully married, that the white people parted them and she went to Florida. He said that he was married to her by an ordained minister. Knew Henry Mack Price's mother. Don't remember her ever being in the neighborhood where Henry Price and Jack Price lived. He said when the white people parted him and his wife and carried her off, that he had two children by her, Henry and John. John was nicknamed Andrew Jackson. Have seen Sarah Pinkney. Uncle Jack said Sarah was his sister. It has been about 30 years ago when I saw Sarah at his house. I testified before, and am stating just what I did say, only I am talking a little more than I ever did say. He told me that he went and got one child and left the other one with her. He said that she was willing to give him Henry, and the baby one he left with her. Knew Bill Price. Saw him after the war, about '72 or '73, in St. Marys. Bill's mother was Margaret Harris. She was living in Clinch County when he was born. Have heard Bill Price say that Jack Price was his father.

Defendant offered in evidence brief of evidence on the former trial of the case.

Emmett McElreath for the plaintiff testified: Have heard the testimony of Mr. Brown as to the missing documents or records in this case. Also his testimony to the effect that he had employed me to get hold of them. Brown came to me and said Mr. Vocelle had written him that he wanted a certified copy of the proceedings in the Supreme Court. Mr. Brown gave me $15 to send to Mr. Vocelle. I sent it to him. I was employed to get the testimony of Mr. Kooner in the Supreme Court. Brown said that there had been some part of the record lost in the Supreme Court.

Plaintiff introduced brief of evidence on a former trial at the November term, 1923, containing the testimony of the defendant. The substance of this testimony is set out above. Plaintiff introduced a deed from J. W. Williams and a deed from Ben Franklin to Jack Price, conveying the property in dispute.

The jury returned a verdict for the defendant. Plaintiff and intervenors moved for a new trial on the general grounds. By amendment were added grounds which are set out in the opinion. The court overruled the motion for new trial, and the plaintiff and intervenors excepted.

*S. C. Townsend,* for plaintiffs.

*Cowart & Vocelle* and *Emmett McElreath,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. When this case was here before this court held that if the action, as finally shaped and tried, was one brought by the administrator for the recovery of the lands for sale and distribution under the order of the ordinary, the administrator made out a prima facie case entitling him to recover upon proof of such order, and upon the admission of the defendant that the intestate owned them at the time of his death. But we further held that the nature of the original action, which was brought for the above purpose, had been changed by an amendment offered by the administrator to his petition, in which he alleged that the intervenors claimed to be the owners of these lands, and that he desired that the respective rights of the intervenors and defendant to these lands might be determined by the court for his protection, and that he might be legally discharged and relieved as administrator. We held that the controversy was thus changed from one between the administrator and the defendant to one between the intervenors and the defendant for the recovery of these lands. While this amendment is not in the present record, this court could order it sent up; but we omit to do this, for the reason that this is unnecessary, as we have this amendment duly certified in the record when the case was here before. So in dealing with this case we shall treat it as one between the intervenors and the defendant, in which both assert title to these lands, and in which the intervenors occupy the relation of plaintiffs. In his brief counsel for the plaintiffs in error frankly states that "The real issue in the case seems to be whether Henry Mack Price was the legitimate son and only heir of Jack Price, or whether the intervenors . . were the only heirs of the said Jack Price." We shall so treat the issue.

2. The court charged the jury as follows: "If you should find that Henry Mack Price was the legitimate child of Jack Price under the law, which I shall give you in charge, and was the only legitimate child of Jack Price, and that after the death of Jack Price the property in question was sold as the property of Henry Mack Price, and Mr. Brown finally became the owner of the property under such sale, the plaintiff would not be entitled to recover, but, under these circumstances, the title would have passed into

the defendant, Mr. Brown." The plaintiff and intervenors except to this charge, and allege that it was erroneous on the ground that it authorized the jury to find for the defendant, notwithstanding the fact that the evidence of the defendant tended to show that Jack Price had a legitimate wife, without proof that she had been divorced, without proof of whether she died before or after his death, and, in the latter event, without proof of the fact that she left no other heirs at law. In other words, the movants complain that this charge authorized a verdict in favor of the defendant upon proof alone of the fact that Henry Mack Price was the legitimate son of Jack Price, when it was necessary for him to prove not only this fact but the further fact that Mack Price was the only legitimate child and sole heir at law of his father, living at the time of his death. This instruction was not erroneous as to the intervenors. The intervenors claim as the sole heirs at law of their mother, who, they assert, was the sole heir at law of the intestate. If the proof established the fact that the intestate left a legitimate son, who was his heir at law, then the intervenors failed to make out a case, whether the intestate left other heirs at law or not. If the intestate died leaving a wife and child or children, they would be entitled to his estate, and not the intervenors. Their claim would be defeated by proof that the defendant was his legitimate son and one of his heirs at law, without proof that the intestate did not leave a wife or child or children who would share with this son his estate as heirs at law. The charge complained of was more favorable to the intervenors than they were entitled to, because it put the burden upon the defendant of showing that Henry Mack Price was the legitimate son and sole heir at law of the intestate, when the defendant only had to show that he was such son and heir at law, without proof that his mother or her children were not entitled to share equally with him in the estate of the intestate. This case would be different if the defendant had brought suit as plaintiff to recover these lands as the purchaser from Henry Mack Price, the heir at law of his father. In such a case the burden would have been upon him to show that this son was the sole heir at law of the decedent, or to show how many heirs the decedent left, as such proof would be necessary to establish the extent of his recovery. *Dupon* v. *McLaren,* 63 *Ga.* 470; *Terry* v. *Brown,* 142 *Ga.* 224, 230 (82 S. E. 566) ; *Price* v. *Brown,*

143 *Ga.* 671 (85 S. E. 870) ; *Overby* v. *Phelps,* 150 *Ga.* 293 (103 S. E. 431).

3. The court charged the jury as follows: "You look to the evidence in this case and determine what you may find the truth to be, as to whether it is made to appear by a preponderance of the evidence that Henry Mack Price was born within what was regarded as a state of wedlock, or when Jack Price and the mother of Henry Mack Price were living together as husband and wife; and if so, if, under the rules of law given you in charge, you should also find that he was the only heir of Jack Price at the time that the sale of the property was made, when it was sold as the property of Henry Mack Price, if it was sold, the title would have passed under the sale and the administrator of the estate of Jack Price would not be entitled to recover against the defendant, E. Brown." Movants except to this charge and allege that it was error for the reason that it was necessary for the jury to find that Henry Mack Price was the only heir at law of Jack Price at the time of his death, before they would be authorized to find for the defendant. This instruction was not erroneous for the reason assigned. If Henry Mack Price was the heir at law of the intestate at the time of the sale, he necessarily must have been such at the death of the intestate. As we have stated above, it was not necessary for the defendant to prove that this son was the only heir of the intestate. Proof that he was one of the heirs of the intestate would defeat the intervenors.

4. The court instructed the jury as follows: "I charge you, gentlemen, that under the evidence the plaintiff would be entitled to recover the land described in the petition, unless the defendant has established his contentions with respect to Henry Mack Price being a legitimate child of Jack Price, and the only heir of Jack Price. That is the real question in the case for your determination, in determining whether or not the plaintiff is, or is not, entitled to recover." Movants except to this charge on the ground that it was erroneous for the reason that the burden was on the defendant to show that Henry Mack Price was the only heir of Jack Price at the time of the latter's death, and that the fact that he might be the only heir living at the time did not preclude the plaintiffs from recovery, if, at the time of the death of the intestate, there were other heirs or descendants of heirs in life when the

suit was filed. This charge was not erroneous as against the plaintiffs, for the reason assigned. What we have said in the second division of this opinion is applicable to the above instruction. Proof of the existence of a single legitimate child of the intestate in being at the time of his death would defeat recovery by the intervenors. The burden did not rest upon the defendant of showing how many children the intestate left at his death, or that his wife was in life at that time.

5. Movants insist that the court erred in failing to charge the jury that the burden of proof rested upon the defendant to establish his contention that Henry Mack Price was the sole heir at law of Jack Price at the time of his death, by a preponderance of the evidence. Failure of the court to charge upon the burden of proof or preponderance of evidence, in the absence of a timely request therefor, will not require the grant of a new trial. *Small* v. *Williams,* 87 *Ga.* 681 (6) (13 S. E. 589) ; *Askew* v. *Amos,* 147 *Ga* 613 (5) (95 S. E. 5).

6. Movants further contend that "The court erred in failing to charge the jury that if they found that Jack Price and the mother of Henry Mack Price were husband and wife at the time Henry Mack Price was born, and therefore he was the only legitimate child of Jack Price, and they further found that other children or another child was born under similar conditions, that they must further find that the wife and any other children of Jack Price were dead at the time of the death of Jack Price, and that they left no heirs, in order for the defendant to recover." The court did not err in failing so to charge the jury, for the reasons (1) that there was no timely request for such charge, and (2) because such omitted instruction does not contain a correct principle of law applicable under the facts of this case.

7. The verdict is supported by the evidence.

         *Judgment affirmed. All the Justices concur.*