14957

EADDY v. GREENSBORO-FAYETTEVILLE BUS LINES, INC.

(5 S. E. (2d), 281)

April, 1939.

*Mr. W. Marshall Bridges,* for appellant, 

*Messrs. McEachin & Townsend,* for respondent, 

November 2, 1939.

The opinion of the Court was delivered by MR. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE.

Linnie Eaddy, a colored woman, purchased a ticket on March 27, 1938, at Marion, South Carolina, to Scranton, South Carolina, by way of Florence. The original ticket was purchased from the Queen City Coach Company but at Florence, South Carolina, the plaintiff was required to transfer from the bus of that company to a bus of the Greensboro-Fayetteville Bus Lines, Inc., to reach her destination. The trip from Marion to Florence was made without unusual incident and at Florence the plaintiff had to wait a considerable time before the bus of the appellant arrived, which time she spent in the bus station at Florence. Upon the arrival of the bus of the defendant the plaintiff, with her infant in arms, boarded the same for transportation to Scranton, surrendering her ticket and turning over her baggage to the operator of the bus. The testimony shows that the plaintiff had been for some time in New York City and although she was born and raised near Scranton she had never made a bus trip from Florence to her old home and

she was not acquainted with the road at this point. The bus was due to arrive at Scranton about 7:50 p. m.

The plaintiff testified that the driver of the bus announced the station of Scranton and that she, with her baby in arms, proceeded to move forward to the exit at the front of the bus near the operator and there was allowed to leave the bus with her baby, and her baggage was given to her by the bus driver. The plaintiff further testified that at the time it was raining and cold and that she was put out at a filling station operated by white people and after the bus had left she inquired and found she was at Effingham and not at Scranton. She then made her way to the house of a colored person and after explaining the situation, received assistance with the baby to make it more comfortable and then inquired about continuing her journey to Scranton. She ascertained that a train left about 9:40 p. m. and she, with Annie Bell Daniel, the person to whose house she went in aid of assistance, walked to the depot and secured a lantern and flagged the train which carried the plaintiff to her destination at Scranton.

The plaintiff further testified that both she and her baby were made sick by the exposure and that as a result she was unable to take care of the baby and was forced to hire some one to assist in the nursing of the baby during its illness. The plaintiff was sick, according to her statement, about two weeks and the baby about three weeks.

The operator of the bus testified that on the occasion of March 27, 1938, he had two passengers for Effingham and one for Scranton; that he always called the stations properly as he was thoroughly familiar with the route; that he had no independent recollection of the plaintiff and her baby being passengers on the bus and denied that he had given any incorrect or erroneous information.

The case was submitted to the jury which rendered a verdict against the appellant herein in the sum of One Hundred ($100.00) Dollars actual damages and Four Hundred ($400.00) Dollars punitive damages. The appellant raises

three exceptions to the rulings of the lower Court which challenge the correctness of the verdict and judgment.

The first exception charges error on the part of the ■ trial Judge in submitting to the jury the question of punitive damages.

In order to assess punitive damages it is necessary that there be present in the testimony some evidence of willfulness or of such gross disregard of the rights of others or such gross negligence that willfulness may be inferred. In the consideration of this case it is necessary to remember that the defendant is a common carrier of passengers for hire and is subject to all of the rules of law applicable to such common carriers. As such carrier it owes to its passengers the highest degree of care to safely transport and deliver them to their destination. This is the rule which was applied in the earlier times of stage coaches and then to railroads and with the advent of other means of transportation the rule should be applied with equal force to these new common carriers. The question as to whether punitive damages should be assessed is one which must, of necessity. largely depend on the circumstances of each individual case, the relationship of the parties and the duties owed by each. Where one owes the highest degree of care the failure to exercise reasonable care is a greater breach of duty than where one owes ordinary care. This Court has held repeatedly that in the handling of dangerous instrumentalities the failure to exercise due care might under the circumstances be a graver breach of duty than in the case where the instrumentality handled is not inherently dangerous. And so it is in the case of a carrier of passengers for hire. The facts and circumstances show that the plaintiff was a colored woman with an infant in arms; that it was raining; in the night; and she was ordered to leave or permitted to leave the bus near a station at which she did not desire to alight, and considerably removed from even that station. She passed the bus driver on her way out and he gave her the baggage which she had entrusted to his care. It was a question for

a jury to determine whether under all of the circumstances, the relationship of the parties, the difficulties under which the plaintiff was laboring and which were apparent to the driver as to whether punitive damages should be allowed. This exception is, therefore, overruled.

The question of the assessment of punitive damages in cases of common carriers of passengers has been considered numbers of times by this Court and a thorough discussion had in the case of *Spellman v. Richmond & D. R. Co.*, 35 S. C., 475, 14 S. E., 947, 28 Am. St. Rep., 858.

See also, *Hall v. South Carolina Railway Co.*, 28 S. C., 261, 5 S. E., 623; *Kibler v. Southern Railway Co.*, 62 S. C., 252, 40 S. E., 556; *Dagnall v. Southern Railway Co.*, 69 S. C., 110, 48 S. E., 97; *Smith v. Southern Railway*, 88 S. C., 421, 70 S. E., 1057, 34 L. R. A. (N. S.), 708; *Williams v. Atlantic Coast Line Railroad Co.*, 99 S. C., 397, 83 S. E., 604, and *Jordan v. Southern Railway Co.*, 100 S. C., 284, 84 S. E., 871.

Exception II questions the failure of the trial Judge to grant a new trial on the ground that the punitive damages given by the jury were excessive. The appellant attempts to place a definite mathematical rule upon the assessment of punitive damages as to the proportion which the same should bear to actual damages. There is no reason for such rule and the same does not exist in South Carolina. In numerous insurance cases where the actual damages have been negligible this Court has allowed substantial punitive damages to stand. If the trial Judge was correct in submitting the question of punitive damages to the jury, then in his discretion he had a right to refuse a new trial as to punitive damages. The question of the amount and character of the verdict is peculiarly within the control of the trial Judge, with certain limitations. He has a right to reduce the actual damages *nisi*, to reduce the punitive damages *nisi* under certain conditions, or to eliminate punitive damages if in his judgment the same should not

be allowed under all of the circumstances disclosed at the trial. *Cubbage v. Roos et al.,* 181 S. C., 188, 186 S. E., 794.

The third exception charges error of the trial Judge in refusing to charge the following proposition of law: "It is certainly not a duty of the driver of a transportation bus to be on the lookout to discover that any particular passenger needs special assistance. Drivers of transportation buses are not required to anticipate such wants or needs. In these extraordinary situations, the bus company is responsible only after the special need of assistance has been brought to the attention of the bus driver."

Under the testimony in the case the above charge was not applicable to the facts developed. The plaintiff had asked for no special assistance and there was no testimony that the driver refused her any assistance requested. The charge above referred to should only be given in cases where passengers either requested such special assistance or were claiming that the carrier was responsible because of failure to render special assistance under the circumstances. The request contained a sound proposition of law had the same been applicable to the facts in the case but as the same was not applicable, the trial Judge was correct in refusing to charge the same.

As to the requirement of the Circuit Judge to charge requests that do not contain complete propositions of law applicable to the case, see *Mitchell v. Charleston Light & Power Co.,* 45 S. C., 146, 22 S. E., 767, 31 L. R. A., 577; and also, *Bank of Waynesboro v. Ellison,* 162 Ga., 657, 134 S. E., 751; *Rudulph v. Brown,* 161 Ga., 319, 130 S. E., 559.

The judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.