16873

## WEATHERFORD v. HOME FINANCE CO.
(82 S. E. (2d) 196)

314

*Messrs. T. P. Taylor,* and *Isadore S. Bernstein,* of Colum-
bia, and *Edward E. Saleeby,* of Hartsville, *for Appellant,*

*Messrs. Tison & Tison,* of Hartsville, *for Respondent,*

May 31, 1954.

PER CURIAM.

On January 29, 1952, Mack Weatherford, respondent, bought from F. F. Morrison, Jr., at Hartsville, S. C., a used automobile. The purchase price was $830.00. He was allowed $275.00 for a trade-in, leaving a balance of $555.00. The terms of the trade having been settled, Weatherford told Morrison that it would be the next day before he could take the car because he had planned to finance the balance through the bank, and it was then after banking hours. At the suggestion of Morrison, the Home Finance Company, in the City of Hartsville, was called on the telephone and the following is Weatherford's testimony as to the conversation that took place between him and Fred Melton, agent of Home Finance Company:

" * * * So I told Mr. Melton who I was. Mr. Melton asked me how much did I want to borrow. I told him I wanted to borrow $555.00 and he asked me why did I want to borrow it from the bank and I told him I thought I could borrow cheaper from the bank than I could them. That I worked a lot of overtime at the mill and I wanted to pay my loan up as quickly as possible and that all the bank would charge me for is some insurance and interest for the time that I had my loan. Mr. Melton said that unless it was

understood with them when a loan was made that they did no cancelling out, but says he knows the charges that was made by the bank and that he would let me have the money just as cheap as their local bank in town would. Said that he would make a note and put with my loan, to make sure that I could pay it up any time I wanted to; that they loaned me the money just as cheap as the bank and he said that if you will let us handle your loan for you, let us handle your loan, you can pay it up any time you want to. Says all that we will charge you is the insurance and the interest for the time that you got your loan. So, Mr. Melton says, you tell Mr. Morrison to fix up the papers and I signed the papers that Mr. Morrison fixed up."

Weatherford was twenty-three years old, worked as a cotton mill hand, had no education beyond the second grade at school, and could not read. Some time during the month of February, and before the first month's payment was due, he received a letter from Home Finance Company enclosing an insurance policy on the automobile purchased, carrying a premium of $105.00, and a notice that his payments would be $46.78 a month for eighteen months. After having his wife look the papers over, Weatherford went to the office of Home Finance Company and asked Mr. Melton to look the papers over as he thought there was some mistake. When told by Melton that there was no mistake, Weatherford asked him what the charge would be to cancel out the loan, and was told it could not be done for less than $40. Weatherford then went to the bank, borrowed $595.00, paid that amount to Home Finance Company, and received his cancelled contract and a receipt showing "cancelled contract $555.00"; "charges $40.00."

Needless to say, the foregoing review of the evidence and all subsequent discussion thereof is in the light most favorable to respondent which is required by the verdict of the jury in his favor. *Branham v. Capital Life and Health Ins. Co.*, 220 S. C. 67, 66 S. E. (2d) 451.

This action was commenced in the Court of Common Pleas for Darlington County on August 21, 1952. Respondent recovered verdict against appellant for $15.00 actual and $4,000.00 punitive damages, the action being for fraud and deceit founded upon the representation alleged to have been made to respondent by the appellant in connection with the loan above described. The defense was a general denial and also a reliance upon the written instruments executed between the parties. On the trial of the case, timely motions were made for a nonsuit and a direction of verdict. After verdict, appellant moved for judgment *non obstante veredicto,* and in the alternative for a new trial. The motion for judgment *non obstante veredicto* was denied but the trial Judge ordered a new trial *nisi* unless respondent should remit the sum of $2,000.00 from the amount of punitive damages. This was done, thus reducing the verdict for punitive damages to the sum of $2,000.00.

The exceptions in this appeal challenge the denial by the trial Judge of the motions for nonsuit, direction of verdict, judgment *non obstante veredicto* or new trial absolute. The first and fundamental question presented is whether there was sufficient evidence of the elements of an actionable fraud to require the submission of the issue to the jury. The elements are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. *Flowers v. Price,* 190 S. C. 392, 3 S. E. (2) 38; *Culbreath v. Investors Syndicate,* 203 S. C. 213, 26 S. E. (2d) 809, 147 A. L. R. 1144; *Smyth v. Fleischmann,* 214 S. C. 263, 52 S. E. (2d) 199.

We are of the opinion that all the elements of fraud and deceit are present here. Appellant contends that the representations relied upon amount to nothing

more than sales talk or a seller of goods praising his wares. We think there was more. Respondent told appellant's agent he could get the loan from the bank for the cost of the insurance and *interest* for the time he had the loan. In response, appellant's agent told respondent that all they would charge him would be the insurance and *interest* for the time he had the loan, and "you can pay it up any time you want to." There was testimony offered that the interest rate charged by the bank in Hartsville, which it if inferable both parties had reference to, was six (6%) per cent interest discounted. Even without this, the use of the term "interest" could not be held to mean more than the highest legal rate of 7%.

It must be kept in mind that the facts here distinguish this transaction from those where a time price differential is charged by the seller of personal property. Here the sale terms had been completed and respondent was merely negotiating a loan of $555.00 plus the premium charges for the insurance universally required for such loans. No time price differential was mentioned at any stage of the negotiations. To the contrary, only interest was discussed.

It was also the contention of appellant that the representations relating to the right of respondent to prepay the *loan* by paying only accrued interest is not actionable because of the rule that fraud cannot be founded upon the failure to fulfill an agreement to do something at a future time. This issue was, however, properly submitted to the jury under the rules laid down in the case of *Branham v. Wilson Motor Co.*, 188 S. C. 1, 198 S. E. 417, 418:

"On the other hand, all acts of deceit and fraud are not only reprehensible, but are actionable in cases where a future promise, falsely made at the time, was a part of a general design or plan existing at the time, made as a part of a general scheme, to induce the signing of a paper, or to make a person act, as he otherwise would not have acted, to his injury. Likewise the fact the other party is induced by future

promises falsely made at the time to part with valuable rights, or to surrender the only evidence of his rights, such as a policy of insurance, to show the contract entered into with a defendant, makes an issue for the jury as to punitive damages. *Cook v. Metropolitan Life Insurance Co.,* 186 S. C. 77, 194 S. E. 636, 639."

The more difficult question is whether respondent was justified in his reliance on the representations made and, correspondingly, whether he used reasonable diligence for his own protection. It is as stated in *Shumpert v. Service Life & Health Insurance Co.,* 220 S. C. 401, 68 S. E. (2d) 340, 344: "The case presents the difficult problem of recognition of the rule of sanctity of written contracts and the rule of relief from fraudulent representations which induced the making of the contract." The same problem is stated in other words in *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 887, 136 A. L. R. 1, as follows: "The policy of the courts is, on the one hand, to suppress fraud, and on the other, not to encourage negligence and inattention to one's own interest. Either course has obvious dangers. But the unmistakable drift is toward the just doctrine that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary."

In view of the limited experience and education of respondent, and of his inability to read, we are satisfied that under the rules laid down in *Shumpert v. Service Life & Health Insurance Co., supra,* and *Thomas v. American Workmen, supra,* and in the cases cited in those two opinions, it could not be held as a matter of law that respondent here, under all the circumstances, was guilty of negligence or carelessness in his reliance upon the representations upon which the action is founded. On this issue the facts of each case are different. Each must necessarily be decided upon its own unique facts.

Referring now to the second question, was there error in refusing appellant's motions for nonsuit and directed verdict

as to punitive damages, this action is strictly one for fraudulent representation or deceit. Being such, it is distinguished from those cases dealing with fraudulent breach of contract where the right to recover punitive damages depends upon whether or not there was a fraudulent act accompanying the breach. *Branham v. Wilson Motor Co., supra.*

Here the entire action as to both actual and punitive damages is dependent upon proof of a false representation knowingly made. The guilty knowledge of the false representation is the foundation to sustain the action itself. The verdict may be for actual and punitive damages where a willful tort has been committed. *Beaudrot v. Southern Railway Co.,* 69 S. C. 160, 48 S. E. 106.

Appellant does not contend that the representations were negligently made, hence those cases dealing with a purely technical trespass or a conversion resulting from simple negligence are not applicable. It follows that there was no error to deny the motions to take the issue of punitive damages from the jury.

The final question relates to the amount of the verdict for punitive damages. This verdict has been reduced from $4,-000.00 to $2,000.00 by the trial Judge granting a new trial *nisi,* and appellant concedes in its brief that this action was based upon the finding that the verdict, although excessive, was not the result of passion, prejudice and caprice.

The trial Judge is necessarily vested with a wide discretion in deciding whether a verdict should be permitted to stand. That discretion has been exercised in this case which reduced the verdict to an amount not considered excessive. To do such is to render substantial justice to both parties. Certainly it cannot be said in this case that there was an abuse of discretion in failing to reduce the verdict as rendered by the jury more than was done. See *Bowers v. Charleston & W. C. Ry. Co.,* 210 S. C. 367, 42 S. E. (2d) 705.

For the reasons stated, all exceptions are overruled, and the judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., and GRENEKER, Acting Associate Justice, concur.