Roger ROBERTSEN, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civ. A. No. 78–233.

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 12, 1979.

Andrew K. Epting, Jr., Charleston, S. C., for plaintiff Roger Robertsen.

Joseph W. Cabaniss, Charleston, S. C., for defendant State Farm Mut. Auto. Ins. Co.

## ORDER

BLATT, District Judge.

Plaintiff instituted this action seeking actual and punitive damages from his *own* insurer for an alleged bad faith refusal of the insurer to pay first party personal injury protection benefits provided in the contract of insurance. Defendant has filed a motion to dismiss on the ground that the required jurisdictional amount is not present in this case, a motion that, apparently simple on its face, casts this court into a difficult jurisdictional and jurisprudential inquiry.

## BACKGROUND

Plaintiff's son was injured while riding his bicycle and, as a result of such injuries, he received medical care, admittedly valued at $2,165.05, from the United States Navy. Pennsylvania National Insurance Company, the insurance carrier for the *motorist* inflicting the injury, paid its full $1,000.00 personal injury protection (PIP), and plaintiff alleges that the balance of the medical expenses owed the Navy—($1,165.05)—is due under defendant's policy which provides for $1,000.00 basic personal injury protection as well as $1,000.00 supplemental injury protection. The defendant insurer refus-

ed to make such payment and the instant litigation has resulted.

## THE MOTION

The defendant has moved to dismiss the instant action for failure to meet the jurisdictional amount. Taking the allegations of the complaint as true, it is clear that the maximum possible actual medical damages are $1,165.05; thus, unless there are other compensable elements of actual damages, or unless punitive damages are allowable in this type of action, the jurisdictional prerequisite is lacking.

## ISSUES

The seemingly simple facts set out above give rise to the following issues:

1. Would South Carolina recognize a cause of action for bad faith, wrongful refusal to settle a first party insurance claim and allow actual damages based on elements other than the amount claimed under the policy plus substantial punitive damages in such an action?

2. Should this court abstain from deciding the issue raised above pending an authoritative statement on this question from the South Carolina Supreme Court?

The court, to develop the issues logically, will answer the second question first.

## TO ABSTAIN OR NOT TO ABSTAIN

Federal courts have long followed the principle that abstention is appropriate under certain circumstances to accommodate delicate considerations of federal-state comity. To that end, federal courts have abstained when a decision by a state court on an unsettled question of state law might avoid a difficult constitutional issue, *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); or when a decision by a federal court would disrupt orderly state administrative procedures, interfere with essential state functions, or create needless friction with important state policies, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *See generally, County of*

*Allegheny v. Frank Mashuda Company,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Both of these situations involve constitutional or statutory issues of a public as opposed to a private nature.[1] In cases involving private litigants raising important unsettled questions of state law which involve—(apart from normal precedential effect)—only the rights òf these private parties, abstention is deemed to be inappropriate, even if it is felt that the federal decision may conflict with later state decisions on the same issue. *See, Wohl v. Keene,* 476 F.2d 171, 174 (4th Cir. 1973). The instant case clearly involves the final category of litigation, for while the issues involved are "groundbreaking" and difficult, they are not the type categorized as "policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Even though the public will have an interest in the creation of a new cause of action against first party insurers, this is not, in this court's opinion, the type of "public interest" represented by state policies, procedures, or adjudications at which *Burford, supra,* abstention is aimed; therefore, the court has determined that abstention, as urged by the defendant, is inappropriate.

## THE FACTOR OF EIGHT

■ Federal courts do not sit to issue advisory opinions or engage in fascinating conjecture as law review writers are wont to do; they sit to decide actual cases and controversies. In the present situation, if this court can say with legal certainty that it would refuse an award of extra-contractual damages of $9,000.00—(approximately eight times the possible medical damage

award of $1,165.05)—it should not decide the issue of whether a cause of action for wrongful failure to settle may exist, because, in any event, the plaintiff would be unable to meet the jurisdictional amount necessary to proceed in this court.

In assessing the propriety of a possible punitive[2] damage award eight times that of the actual damages, the court has reviewed the factors that the South Carolina Supreme Court has considered in determining an appropriate amount in a particular case; among these factors are "the character of the tort committed, the punishment which should be meted out therefor, and the ability of the wrongdoer to pay." *Hicks v. Herring,* 246 S.C. 429, 144 S.E.2d 151, 155 (1965).

The South Carolina Supreme Court has repeatedly shown no great discomfort with punitive damage awards in the range of three to ten times the actual damage award and has, on occasion, approved awards much higher. For instance, in one of the earlier cases found considering the issue, the court approved $1,014.00 punitive damages in a trespass case where the actual damage award was only $2.50. *Beaudrot v. Southern Railway Co.,* 69 S.C. 160, 48 S.E. 106 (1904). Other representative cases allowing a wide range of punitive damage awards both in amount as well as in percentage are: *Bradley v. Metropolitan Life Insurance Co.,* 162 S.C. 303, 160 S.E. 721 (1931) [$180.00 actual, $2,000.00 punitive—breach of contract accompanied by fraudulent act]; *Eaddy v. Greensboro-Fayetteville Bus Lines,* 191 S.C. 538, 5 S.E.2d 281 (1939) [$100.00 actual, $400.00 punitive—breach of duty by common carrier]; *Morrow v. Evans,* 223 S.C. 288, 75 S.E.2d 598 (1953) [$5,000.00 actual, $15,000.00 punitive—auto collision]; *Weatherford v. Home Finance*

1. A third type of abstention arises in a situation where, absent state bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Abstention has also been approved in "exceptional circumstances" where an action raising dispositive issues is presently pend-

ing before a state court between the same parties. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

2. Assuming that any other elements of actual damages would not, under the facts of this case, be substantial.

*Co.*, 225 S.C. 313, 82 S.E.2d 196 (1954) [$15.00 actual, $2,000.00 punitive—fraud]; *Hall v. Walters*, 226 S.C. 430, 85 S.E.2d 729 (1955) [$1,000.00 actual, $25,000.00 punitive —assault]; *Norton v. Ewaskio*, 241 S.C. 557, 129 S.E.2d 517 (1963) [$310.00 actual, $3,440.00 punitive—traffic accident with Catholic monk as defendant]; *Hicks v. Herring*, 246 S.C. 429, 144 S.E.2d 151 (1965) [$2,000.00 actual, $7,500.00 punitive—auto collision]; *Thompson v. Home Security Life Insurance*, S.C., 244 S.E.2d 533 (1978) [$433.00 actual, $12,500.00 punitive—breach of insurance contract accompanied by fraudulent act].

■ As indicated by the wide range of dollar and percentage variance between the aforementioned actual and punitive damage awards allowed to stand, the South Carolina Supreme Court does not adhere to any *per se* rule on such matters. As stated by that court:

"The appellant attempts to place a definite mathematical rule upon the assessment of punitive damages as to the proportion which the same should bear to actual damages. There is no reason for such rule and the same does not exist in South Carolina." *Eaddy, supra,* (5 S.E.2d at 283).

■ Based on both ancient and recent precedent in South Carolina, this court cannot say to a legal certainty that, after hearing the facts of this case—(if this court should permit the cause of action plaintiff proposes)—it would strike a $9,000.00 punitive damage award should such facts indicate an unusually wrongful situation.

### ALLOWANCE OF THE CAUSE OF ACTION

Having concluded the preliminary "sparring" hereinabove stated, the court now reaches the "main event"—the question of whether this court, under *Erie*,[3] applying South Carolina law, will predict that the South Carolina Supreme Court, if faced with the identical question, would allow a cause of action against a first party insurer for wrongful failure to pay first party benefits. Such a decision requires considerable immersion into the *"Tyger River"*[4] doctrine to analyze its jurisprudential underpinnings; additionally, recent cases from other jurisdictions may provide guidance as to the trend of law in this area, but, in the final analysis, true to *Erie*, the court must prognosticate what the South Carolina Supreme Court would do. *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243 (4th Cir. 1974); *Doyle v. United States*, 441 F.Supp. 701, 713 (D.S.C.1977).

Although apparently unrecognized by some judges, who otherwise possess excellent jurisprudential reputations, the South Carolina Supreme Court is, in this court's opinion, in the vanguard of the law when consumer protection or redress of personal rights is involved. In a recent case removing barriers to suits against charitable hospitals, *Brown v. Anderson County Hospital*, 268 S.C. 479, 234 S.E.2d 873 (1977), that court provided a timely reiteration of its philosophy:

"The defendant argues that no change in the law of charitable immunity should be made by this Court by reason of *stare decisis.* We reject this argument. This doctrine is not intended 'to effect a "petrifying rigidity"', but to assure the justice that flows from certainty and stability'. [citation omitted]. Fundamentally, *stare decisis* is not a rule of law; it is a matter of judicial policy. . . . It does not render immutable judicial formulations of common law rules." 234 S.E.2d at 876.

The Court of Appeals for the Fourth Circuit in *Smith v. Regina Mfg. Corp.*, 396 F.2d 826, 828 (4th Cir. 1968), expressly recognized the progressive stance that the Supreme Court of South Carolina assumes on matters affecting personal rights. With all relevant authorities in accord as to the innovative character of the South Carolina Court, this court, in this diversity action, will, as recently put by its experienced and

---

3. *Erie Railroad v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

4. *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.C. 286, 170 S.E. 346 (1933).

distinguished colleague, "adopt the state's decision-making processes." *Gattis v. Chavez*, 413 F.Supp. 33, 37 (D.S.C.1976) (Hemphill, J.).

Plaintiff seeks to extrude his novel cause of action from the policy underlying *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.C. 286, 170 S.E. 346 (S.C.1933), and its progeny. That policy is often expressed in this state as a requirement that an insurer, when faced with a choice which will affect its insured adversely, must place its client's interests before its own if to do otherwise would constitute negligence and/or bad faith. In particular, the South Carolina Supreme Court has said:

> "Unreasonable refusal on [the company's] part to accept an offer of compromise settlement has been held to render it liable in tort to the insured for the amount of the judgment against [the insured] in excess of the policy limit." *Miles v. State Farm Mutual Automobile Insurance Co.*, 238 S.C. 374, 120 S.E.2d 217, 220 (1961).

The South Carolina Supreme Court, like courts of many other states, has found that a liability insurer owes its insured a duty to defend and settle suits brought against its insured in good faith and with reasonable care. *Miles, supra*. The question facing this court is whether the South Carolina Supreme Court would place a similar duty on an insurer to settle its insured's first party claims arising under an auto liability policy containing first party personal injury protection benefits.[5]

The South Carolina Supreme Court and its Legislature have not been completely silent in this area. In the famous case of *Welborn v. Dixon*, 70 S.C. 108, 49 S.E. 232 (1904), the South Carolina Supreme Court developed the doctrine that a breach of contract—(usually an insurance contract)—accompanied by a fraudulent act can give rise to punitive damages. Most recently that doctrine was applied in *Thompson v.*

*Home Security Life Insurance*, S.C., 244 S.E.2d 533 (S.C.1978), when the defendant insurance company, upon learning of plaintiff's diabetic condition, substituted policies under the guise of increasing coverage, whereas its true plan was to prevent plaintiff's insurance recovery for his diabetic hospitalization. Plaintiff recovered punitive damages thirty times actual damages. One may speculate as to the result had the insurer denied coverage solely on the basis of nonpayment of premiums—(which was its alternate spurious defense)—without the issuance of a bogus replacement policy. Such a situation is analagous to that allegedly presented here—refusal to pay benefits on the basis of a groundless, bad faith defense.

■ The Legislature has nearest approached the exact question presented here in South Carolina Code § 38–9–320 (1976), which section provides:

> "*Liability for attorneys' fees where insurer has refused to pay claim.*
>
> (1) In the event of a claim, loss or damage which is covered by a policy of insurance or a contract of a nonprofit hospital service plan or a medical service corporation and the refusal of the insurer, plan or corporation to pay such claim within ninety days after a demand has been made by the holder of the policy or contract and a finding on suit of such contract made by the trial judge of a county court or court of common pleas that such refusal was without reasonable cause or in bad faith, the insurer, plan or corporation shall be liable to pay such holder, *in addition to any sum or any amount otherwise recoverable*, all reasonable attorneys' fees for the prosecution of the case against the insurer, plan or corporation. The amount of such reasonable attorneys' fees shall be determined by the trial judge and the amount added to the judgment. In no event shall the amount of the attorneys' fees exceed one third of

---

5. While much of the following discussion may also be relevant to first party claims made under health, disability, life, and property insurance policies, the present case presents only

the question of the extension of the duty of good faith to the policy described in the body of this Order.

the amount of the judgment or the sum of twenty-five hundred dollars, whichever is less.

(2) If attorneys' fees are allowed as herein provided and, on appeal to the Supreme Court by the defendant, the judgment is affirmed, the Supreme Court shall allow to the respondent such additional sum as the court shall adjudge reasonable as attorneys' fees of the respondent on such appeal.

(3) Nothing in this section shall be construed to alter or affect the *Tyger River Pine Co. v. Maryland Casualty Co.*, 161 S.E. 391, 163 S.C. 229, doctrine." [emphasis added]

This law allows recovery for bad faith-unreasonable—(negligent)—refusal to pay benefits, but speaks clearly only as to attorney's fees. Subsection (3) which refers to the *Tyger River* doctrine obliquely is, in this court's opinion, "a mystery wrapped in a puzzle inside an enigma." What did the Legislature mean by the statement that the section was not to alter or affect the *Tyger River* doctrine? Did it intend to limit recovery to attorney's fees in cases not traditionally governed by *Tyger River*;[6] or did it intend to express a "hands-off" approach as to the future development of the *Tyger River* doctrine? Unfortunately, legislative history does not exist for South Carolina statutes and, therefore, this court is left to ponder the full meaning of subsection (3). Based on the judicially recognized progressive stature of the South Carolina Legislature,[7] this court is convinced that it did not intend to reduce the *Tyger River* doctrine, or its emanations, in any respect, but rather that it intended that court interpretations of *Tyger River* should continue without interference from the Legislature.

The Legislature has also indicated its awareness of the problem of bad faith dealings by insurers in South Carolina Code § 38–37–1110(3), which provides that an insurer who fails

"to adopt and implement reasonable standards for the prompt investigation and settlement of claims, including third party claims, arising under its policies"

is liable for a $10,000.00 fine, or suspension of its license, said penalty to be imposed by the South Carolina Insurance Commissioner (§ 38–37–1120). Significantly, this court notes that the South Carolina Supreme Court in *G–H Insurance Agency v. Travelers Insurance Companies*, 270 S.C. 147, 241 S.E.2d 534 (S.C.1978), held that the fact that the Insurance Commissioner could impose a penalty for violation of another section of the Act—(§ 38–37–940(1))—(termination of an agent)—*did not* preclude the court from determining that the termination was "wrongful", allowing the agent himself to sue in a private cause of action for wrongful breach of contract. (241 S.E.2d at 536).

In addition to the statutes discussed above, South Carolina Code § 38–55–70 provides:

"No person shall, in connection with adjusting any claim, loss, or damage under a contract or policy of insurance, misrepresent to an insured, or any other person having an interest in the proceeds payable under such contract or policy, the terms, coverage or effect of such contract or policy, for the purpose and with the intent of effecting settlement of such claim, loss or damage under such contract or policy on less favorable terms than those provided in and contemplated by such contract or policy."

**6.** This view was expressly rejected by the Seventh Circuit Court of Appeals in *Eckenrode v. Life of America Insurance Company*, 470 F.2d 1, 5, n. 5 (7th Cir. 1972) where the court, in allowing a cause of action similar to that proposed here, said that a statute, similar to South Carolina Code § 38–9–320, ". . . by its [very] terms is limited to attorney['s] fees and does not militate against our decision." Not only is § 38–9–320 similarly limited, but it expressly recognizes, in the emphasized language, that attorney's fees are awarded in addition to damage amounts "otherwise recoverable."

**7.** *Cf., Lane v. Trenholm Building Co.*, 267 S.C. 498, 229 S.E.2d 728, 731, n. 3 (1976) where the Supreme Court remarked:

"Our Legislature continues to place South Carolina in the vanguard of consumer protection."

A violation of this section is deemed to be an "unfair trade practice," subjecting the violator to a possible fine or suspension of license (§ 38–55–240). It is interesting to note that the South Carolina Supreme Court in *Brown v. All American Life and Casualty Company*, S.C., 247 S.E.2d 812 (1978) cited this section as relevant to the existence of an insurer's duty "to speak the truth as to the terms and coverage of the policy" in a *private* action for fraudulent procurement of a release.

The South Carolina Supreme Court has recently re-emphasized its own liberal view in the insurance field by holding that the South Carolina Automobile Reparation Reform Act of 1974 makes it "wrongful" for an insurer to terminate a contract of an insurance agency for insuring an excessive number of "bad risks"; thus such agency may bring suit at common law in a private cause of action, *G–H Insurance Agency v. Travelers Insurance Companies*, 270 S.C. 147, 241 S.E.2d 534 (S.C.1978). In a later opinion, the court held that such a cause of action may be retroactively applied to attack terminations based on contracts entered into prior to the effective date of the statute. *Rowell v. Harleysville Mutual Insurance Company*, S.C., 250 S.E.2d 111 (1978).[8] A more directly relevant example of the South Carolina Supreme Court's liberal attitude in insurance benefit cases is *Moultrie v. North River Insurance Co.*, S.C., 249 S.E.2d 158 (1978), where the court held that an insured who recovers from a tortfeasor for his injuries and medical expenses may still claim full Personal Injury Protection—(PIP)—benefits from his own insurer—without granting his insurer a setoff; the court rejected the "double recovery" argument of the insurance company in reaching its decision.

 In South Carolina today, as viewed by this court, an insured may recover punitive damages from his insurer for fraudulent breach of an insurance contract accompanied by a fraudulent act (*Welborn v. Dixon, supra*); he may recover attorney's fees from his insurer for bad faith-unreasonable refusal to pay benefits (South Carolina Code § 38–9–320 (1976)); he may recover an excess judgment rendered against him based upon his insurer's bad faith-negligent refusal to settle or defend (*Tyger River, supra*); and he may complain to the Insurance Commissioner and have his insurer's license revoked, or a fine imposed, for such insurer's unreasonable failure to pay benefits (South Carolina Code § 38–37–1110(2)), or for its misrepresentation concerning an insurance policy during settlement negotiations (§ 38–55–70). In addition, both the South Carolina Supreme Court and the South Carolina Legislature have repeatedly evinced a liberal attitude in the protection and promotion of the rights of individuals against insurance companies. Based on these factors, and after full consideration of the precedent, attitude, and laws of this state, this court has concluded that the South Carolina Supreme Court would recognize a cause of action for bad faith-unreasonable refusal to pay first party insurance benefits; such an action would partake of a hybrid character similar to that described in *Tyger River, supra*. Specifically, the insured would be able to waive the contract and sue in common law tort for the intentional, reckless or unreasonable refusal of the insurance company to pay benefits which are clearly due under the policy. *See, Jolly v. General Accident Group*, 382 F.Supp. 265, 266 (D.S.C.1974)—[*Tyger River* conduct gives rise to suit in either tort or contract]. Thus, it appears that if the insured can demonstrate bad faith-unreasonable action on the part of his insurer, he can recover compensatory damages [9] not limited to the face amount of the policy. In addi-

---

8. However, this court's distinguished brother on the federal bench, the Honorable Robert F. Chapman, has recently held that retroactive application of a private cause of action to contracts entered into before the effective date of the statute would violate the Impairments of Contracts Clause (Art. 1, § 10) of the United States Constitution, *Garris v. Hanover Insurance Company*, (C/A # 76–1411, 12/30/78).

9. Such damages would vary according to the type of contract. For example, in a PIP case, such as involved here, the insurer might be liable for any penalty imposed by the medical services provider on the insured who is unable to pay his medical bills without his insurance check. Whether an insured who suffered mental distress as a result of the failure to pay PIP benefits could recover damages for such dis-

tion, if he can demonstrate that the insurer's failure to pay benefits was willful, or in reckless disregard of his rights, he can recover punitive damages. This conclusion finds support in recent case law from other jurisdictions. For instance, in *Craft v. Economy Fire & Casualty Company*, 572 F.2d 565 (7th Cir. 1978), the court held that an insurer who fails to pay uninsured motorist benefits to its insured without reasonable cause is liable for actual damages "including interest for any undue delay in payment of the policy limits and compensation for any other injury proximately caused by [the insurer's] breach" (572 F.2d at 574); additionally, that court stated:

> tress depends on the nature of his cause of action. *See, Dawkins v. National Liberty Life Ins. Co.*, 252 F.Supp. 800 (D.S.C.1966). *Compare, Fletcher v. Western National Life Insurance Company*, 10 Cal.App.3rd 376, 89 Cal. Rptr. 78 (4th Dist., Cal.Sp.Ct. hearing denied 1970).

In *Dawkins*, Judge Hemphill held that mental distress is too remote an element of damages in an action *ex contractu* arising from an insurance policy breach to be considered as having been in the minds of the contracting parties when the policy was signed, (at 802); here, however, the cause of action proposed is *ex delicto*. The recent opinion of the South Carolina Supreme Court in *Hutson v. Continental Assurance Co.*, S.C., 237 S.E.2d 375 (1977) makes the distinction clear:

> "The rule in contract actions is to be distinguished from the rule in tort actions. In tort actions, damages may be recovered for all injuries which proximately follow, whether or not such injuries could have been anticipated or contemplated. In breach of contract actions, only such damages as may reasonably be supposed to have been in the contemplation of both parties at the time the contract was made may be collected." at 379.

Thus, there appears to be no conflict between allowing damages for emotional distress in a tort action while denying such damages in a contract action arising out of the policy itself. It is clear in South Carolina that "emotional distress" is a proper element of tort damage as long as such distress encompasses some physical manifestation. As stated in *Spaugh v. A. C. L. Railroad Co.*, 158 S.C. 25, 155 S.E. 145, 147 (1930):

> "In order to receive bodily injury, it was not necessary that the plaintiff should lose a limb or receive a broken limb, or have wounds inflicted on her body. Having her nervous

"Since Indiana has recognized a public interest in deterring insurance companies from attempting to exact additional consideration from their insureds—[citations omitted]—the jury should be allowed to consider an award of punitive damages if the court finds at trial that there is any evidence of fraud, malice, gross negligence, or oppressive conduct." 572 F.2d at 574.

More recently, in *Black v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 582 F.2d 984 (5th Cir. 1978), the court held, where an insurer refused to pay uninsured motorist benefits to its policyholder on the unreason-

> system injured, and being made sick, in the manner she testified, constitute bodily injury . . . ."

As can be seen from the quoted language, the often misunderstood doctrine that "there is no recovery in South Carolina for mental suffering" means only that in the absence of "bodily injury"—(as broadly defined above)—plaintiff cannot recover in tort for humiliation, embarrassment or insult; however, once "bodily injury" is proven, plaintiff may recover for mental anguish or fear as well as for the more tangible aspects of such injury. *Padgett v. Colonial Wholesale Distributing Co.*, 232 S.C. 593, 103 S.E.2d 265 (1958); *Folk v. Seaboard Air Line Railway*, 99 S.C. 284, 83 S.E. 452 (1914). In the recent case of *Bellamy v. General Motors Acceptance Corp.*, S.C., 239 S.E.2d 73 (1977), the South Carolina Supreme Court held that a debt collector, whose conduct was "clearly unreasonable and abusive" in refusing to leave plaintiff's home (at 74), was subject to damages for "willful, wanton and malicious" imposition of "emotional distress and resulting physical illness." While this case arose from a debtor-creditor relationship, it is easy to understand that a bad faith refusal to pay first party insurance benefits could have adverse effect on an insured's health. It is a matter of common knowledge that one who makes claim for such benefits usually does so immediately following some trauma—(accident, sickness, fire, death)—and, therefore, wrongful failure to pay such benefits may likely cause the one so denied to suffer physical and emotional bodily injury. As pointed out in *Hutson v. Continental Assurance Co., supra*, it is not necessary that tort damages be anticipated, as long as they proximately flow from the breach of duty. This court feels that physical and emotional "bodily injury" can be a proximate result of a breach of the *tort* duty to settle first party claims reasonably, and in good faith.

able ground that the policy had been cancelled, when the policy arguably had not been cancelled, that actual damages were properly awarded under the policy, and, further, that the jury should have been permitted to consider an award of punitive damages for the independent tort of unjustified refusal to pay a claim. (at 990).

■ This court recognizes that it has long been the law of South Carolina that:

"Breach of contract, however fraudulent the intent impelling or accompanying it, does not of itself give rise to a cause of action for punitive damages." *Blackmon v. United Insurance Company*, 233 S.C. 424, 105 S.E.2d 521, 523 (S.C.1958).

Recently, Chief Justice Lewis in *Dunsil v. E. M. Jones Chevrolet Co.*, 268 S.C. 291, 233 S.E.2d 101, 104 (S.C.1977) stated:

"But that, in order to recover punitive damages for breach of contract, the breach must have been accomplished with fraudulent intent and accompanied by a fraudulent act." (concurring).

The rejoinder to these respected quotations is that, like *Tyger River*, an insurer may sue in *tort* under this new theory rather than *ex contractu*. As Chief Justice Lewis recognized:

"Our decisions clearly show that the rule in contract cases, requiring proof of a fraudulent act accompanying the breach to recover punitive damages, is a much more strict rule of liability than that applied in tort cases where recovery of punitive damages is allowed upon proof of a wilful, wanton or reckless act." 233 S.E.2d at 104 (concurring).

While the Fifth and Seventh Circuit cases noted above concern first party liability under an *uninsured* motorist provision, the insurer in a PIP [10] case stands in an even more precarious position with respect to a duty to settle for, while it is the right and duty of an uninsured motorist carrier to defend the original suit brought by its insured in which the insurer can raise such issues as the insured's contributory negligence, in a PIP case this court believes that payment was envisioned by the Legislature to be made immediately without the necessity of litigation, except in rare instances. Thus, this case presents a more compelling argument for the imposition of a duty of due care apart from that imposed under normal contract principles.[11] Although the two recent federal cases herein cited construed the law of Mississippi and Indiana, respectively, and recognizably are not controlling here, they do indicate the "vanguard" of liberal thought in this area.

In its most recent pronouncement to date concerning punitive damages against insurance companies, the South Carolina Supreme Court let stand an award of $800.00 actual damages and $8,700.00 punitive damages against a first party insurer that refused to settle a property damage claim based on a collision policy and, subsequently, sold the insured's car without her consent. *King v. Allstate Insurance Company*, S.C., 251 S.E.2d 194 (1979). While the punitive damages were technically awarded for the conversion of the car, the court indicated displeasure with the insurer's attitude toward its insured:

"The company made no effort to settle her claim even though she contacted the company on fifteen occasions during the ensuing four months."

While the quoted language was used by the court to bolster its determination that something more than a "technical conversion"—(at 196)—had occurred, this opinion as a whole reflects an attitude of substantial concern for the rights of policyholders treated unfairly by their insurers, an attitude which this court, sitting under *Erie*, must attempt to capture and apply to the case at bar. This court feels that the same concern voiced in the *King* opinion would be

---

10. A PIP benefit clause is, in effect, a hospitalization-disability policy contained within the usual auto liability policy. *See*, South Carolina Code § 56–11–110 (1976).

11. For a recent annotation listing jurisdictions adopting in whole or in part—(legislatively or judicially)—a cause of action similar to that discussed here, see 47 *A.L.R.3rd* 314 "Insurer's Liability For Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due Under Contracts."

voiced by the South Carolina Supreme Court in a proper case to recognize an action in tort for wrongful failure to settle a first party insurance claim, giving rise to punitive damages upon proof of a willful, wanton or reckless act.[12]

Based on the views heretofore expressed that a cause of action as described herein may be maintained under the law of South Carolina, and that such cause of action may involve actual damages for elements other than the amount claimed under the policy and substantial punitive damages, which meet the jurisdictional requirement of this court, the defendant's motion to dismiss is denied; the defendant shall have thirty (30) days from the date hereof to answer, plead, or file any other appropriate motions herein (F.R.C.P. 12(a)).

AND IT IS SO ORDERED.[13]

12. Although South Carolina, as has been noted here, has been placed in the vanguard of those states providing protection to citizens injured in their person or property, it appears that she will be required to take a position slightly behind the leaders on this question. In addition to the two recent federal Appeals Court opinions noted herein, several other jurisdictions have recognized—(judicially or legislatively)—a duty of first party insurers to be fair with their insureds, though those jurisdictions differ to some extent as to the elements of the cause of action and the recovery. For instance, in *Escambia· Treating Co. v. Aetna Casualty & Surety Co.*, 421 F.Supp. 1367 (N.D.Fla.1976), the court concluded that an unreasonable, bad faith refusal to pay first party benefits would give rise to compensatory damages and, if the acts complained of were committed "with malice, moral turpitude, wantonness, willfulness, outrageous aggravation, or reckless indifference to the rights of others"—(at 1371)—punitive damages would be warranted. In reaching its conclusion, the court cited several California decisions holding that the duty to act fairly in dealing with first party insureds and the almost universally accepted duty to reasonably defend and settle third party suits "are merely two different aspects of the same duty" (at 1370). In *Eckenrode v. Life of America Insurance Co.*, 470 F.2d 1 (7th Cir. 1972), the court held that actual, but not punitive damages, could be awarded for "outrageous conduct" by the insurer which intentionally or recklessly caused an insured emotional distress in refusing to settle a first party claim. (at 4). The court noted that Illinois—(like South Carolina)—had a statute awarding attorney's fees for bad faith failure to pay benefits, but it rejected the insurer's argument that the statute impliedly limited recovery to the amount or elements set forth in the statute. (at 5, n. 5). In *Phillips v. State Farm Mutual Automobile Insurance Co.*, 437 F.2d 365 (5th Cir. 1971), the court, through then-Judge Griffin Bell, recognized that under Georgia law, "a frivolous and unfounded failure to pay a valid claim" (at 369) would, by statute, give rise to damages of 25 per cent in excess of ,the loss insured, as well as attorney's fees. To the same effect is *Tyber v. Great Central Insurance Co.*, 572 F.2d 562 (6th Cir. 1978)—[construing a similarly worded Tennessee statute]. *See also, Miller v. Mutual of Omaha*, (D.Kan. Aug. 22, 1972) 21 ATLA L.Rep. 416 (Nov., 1978) [$47,500.00 settlement from the "People Who Pay" in action for bad faith refusal to pay first party disability benefits under a $3,000.00 policy; case discussion reports that in an earlier case, the court had indicated that "if the Kansas Supreme Court had the chance, they (sic) would adopt this cause of action"] *but see, D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, Pa.Super., 396 A.2d 780 (1978) [equally divided state supreme court lets stand lower court decision refusing to allow tort action for unreasonable failure to pay benefits under property insurance policy], *Frizzy Hairstylists, Inc. v. Eagle Star Insurance Co.*, 93 Misc.2d 59, 403 N.Y.S.2d 389 (1977) [cause of action allowed but punitive damages refused]. For a recent article listing the jurisdictions adopting some variant on the cause of action approved here, *see*, 85 *Case & Comment* 48 (1978).

13. This court notes that if it should again be wrong in its prognostication of state law, *Rabon v. Guardsmark, Inc.*, 571 F.2d 1277 (4th Cir. 1978), it will be in distinguished company. *Compare, Hill v. James Walker Memorial Hospital*, 407 F.2d 1036 (4th Cir. 1969) [liability insurance subjects hospital to retroactive liability for torts after abrogation of charitable immunity in North Carolina]; with, *Helms v. Williams*, 4 N.C.App. 391, 166 S.E.2d 852 (1969) [liability insurance *does not* subject hospital to retroactive liability for such torts notwithstanding Fourth Circuit View in *Hill* ]. *Also compare, Clouse v. American Mutual Liability Insurance Company*, 344 F.2d 18 (4th Cir. 1965) [compliance with South Carolina Title Certificate Law necessary to transfer ownership of motor vehicle for purposes of determining its ownership under insurance policy] and *Security General Insurance Company v. Universal Underwriters*, 384 F.2d 1000 (4th Cir. 1967) *aff'g.* 263 F.Supp. 74 (D.S.C.1967) [reaffirming *Clouse* ] with, *St. Paul Fire and Marine Insurance Company v. Boykin*, 251 S.C. 236, 161 S.E.2d 818 (1968) [". . . we do not agree that the decision of the *Clouse* case correctly interpreted [the South Carolina Title Certificate Law]"; court finds *Clouse* court compounded its error by misconstruing both registration/licensing and transfer of ownership sections of South Carolina Code].