935 F.2d 1286
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
George W. GUILL, Plaintiff-Appellee,
v.
ACADEMY LIFE INSURANCE CO., Defendant-Appellant,
Academy Insurance Group, Inc., Pension Group of America,
Pension Life Insurance Company of America, Academy
Services, Defendants.
Norris O. WHITLEY, Plaintiff-Appellee,
v.
ACADEMY LIFE INSURANCE CO., Defendant-Appellant,
Academy Insurance Group, Inc., Pension Group of America,
Pension Life Insurance Company of America, Academy
Services, Defendants.
 No. 89-1509.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1990.
Decided June 19, 1991.
 
 Appeals from the United States District Court for the District of South Carolina, at Columbia. Karen L. Henderson, District Judge. (CA-87-2829-3-16, CA-87-2860-3-16)
 James Wright Crabtree, Smathers & Thompson, Charlotte, N.C. (argued), for appellants; Charles E. Baker, Belser, Baker, Barwick, Ravenel & Bender, Columbia, S.C., on brief.
 Peter L. Murphy, Glenn, Irvin, Murphy, Gray & Stepp, Columbia, S.C., Mortimer Meyer Weinberg, Jr., Weinberg, Brown & McDougall, Sumter, S.C., for appellees.
 D.S.C.
 Affirmed.
 Before DONALD RUSSELL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Academy Life Insurance Company appeals a judgment entered on a verdict for conversion of commissions it owed to George W. Guill and Norris G. Whitley. Academy claims that the evidence does not support the verdict and that punitive damages were excessive. We held this case in abeyance awaiting the decision in Pacific Mutual Life Ins. Co. v. Haslip, 111 S.Ct. 1032 (1991), for guidance on the issue of punitive damages. We now affirm.
 
 
 2
 * Academy sells life insurance through a three-level sales force composed of agents, general agents (GAs), and managing general agents (MGAs). Academy's employment contracts provide that its agents are independent contractors. They receive sales commissions whenever they, or agents they supervise, sell a policy and thereafter whenever premiums are paid on that policy. The MGAs' right to commissions vests upon sale of the policy, and commissions are payable while the policy is in force.
 
 
 3
 Academy calculates commissions by computer as the premiums are received, and the commissions are credited to accounts assigned to each agent involved. These accounts are also used to record advances given to agents by Academy. Advances are considered loans, which agents repay with interest. In addition, MGAs have "escrow" accounts for recording a certain percentage of their commissions to serve as "collateral" for debts owed to Academy, primarily for advances, by GAs and agents operating under the MGAs. The MGAs are ultimately responsible for such debts. Academy pays interest on funds in escrow and other agent accounts, beginning 60 days after receipt of premiums.
 
 
 4
 Guill and Whitley joined Academy in the late 1970s. They began as agents and advanced to become general agents, then managing general agents. Academy fired both in July of 1986, but according to their contract Academy was obligated to pay them renewal commissions on certain existing policies which they, or agents they supervised, had sold. Following the terminations, Academy began reducing its monthly payments to the men and stopped sending the documentation which customarily accompanied those payments. Academy stopped sending the payments altogether in 1988, alleging that Guill and Whitley had materially breached their contracts by soliciting for another life insurer.
 
 
 5
 Guill and Whitley claimed that Academy owed them commissions from premiums paid on policies which had been improperly removed from their accounts, because the agents who sold the policies were apparently reassigned to other MGAs following the termination of Guill and Whitley.
 
 
 6
 There was also evidence that escrow funds were misappropriated by Academy. Funds could be drawn from escrow accounts for only two purposes--to repay debts for which the MGA was responsible or to pay the MGA. Guill and Whitley testified that they had not received any payments from their escrow accounts, nor did they owe any money to Academy. Nonetheless, funds were withdrawn from the escrow accounts. What happened to the funds is unclear.
 
 
 7
 Guill and Whitley sued Academy in September of 1987, alleging breach of contract and conversion. In June of 1989, the district court directed a verdict against Academy for breach of contract and sent the issues of conversion and damages to the jury. The jury found against Academy on the conversion claim, returning a verdict for Guill in the amount of $51,449 actual damages and for Whitley in the amount of $25,390 actual damages. The jury awarded punitive damages of $250,000 each to Guill and Whitley.
 
 
 8
 Academy moved for judgment n.o.v. on the conversion claims and consequent punitive damages, asserting that there was insufficient evidence to support a finding of conversion. It sought a new trial to determine the damages resulting from Academy's breach of contract. Alternatively, Academy moved for a new trial because the damages were excessive, contrary to the clear weight of the law, and unduly liberal. The district court denied Academy's motions and Academy appealed.
 
 II
 
 9
 The law in South Carolina on conversion was explained in Owens v. Andrews Bank & Trust Co., 265 S.C. 490, 496-97, 220 S.E.2d 116, 119 (1975):
 
 
 10
 Conversion has been defined in our case law as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the exclusion of the owner's rights. Conversion may arise by some illegal use or misuse, or by illegal detention of another's chattel.
 
 
 11
 Money may be the subject of conversion, when it is capable of being identified, and there may be conversion of determinate sums even though the specific coin and bills are not identified. However, there can be no conversion where there is a mere obligation to pay a debt. (citations omitted)
 
 
 12
 Academy claims that the commissions owed to Guill and Whitley were debts which were to be paid out of Academy's general funds and its retention of the commissions was, therefore, not conversion. Academy relies upon Owens v. Zippy Mart of S.C., 268 S.C. 383, 234 S.E.2d 217 (1977). In Zippy Mart the South Carolina Supreme Court held that an employer's withholding of an employee's wages because the employer believed that the employee had stolen money did not constitute conversion.
 
 
 13
 The South Carolina Supreme Court has distinguished mere failure to pay a debt, as in Zippy, from affirmative misconduct in the failure to pay a debt, as in Andrews. In Andrews the bank failed to return a customer's deposit when she closed the account. Instead, the bank retained her money as security against a debt that her husband owed the bank. The South Carolina Supreme Court held that this constituted conversion.
 
 
 14
 In Zippy Mart the Supreme Court noted that Andrews "was predicated on conduct more onerous than a simple breach of contract.... While emphasizing the depositor's immediate right to possession and the want of any legal right to detain delivery of funds, Owens was couched primarily on the character and motive of the conduct involved." 268 S.C. at 385, 234 S.E.2d at 218. Zippy Mart's mere failure to pay disputed wages was not "oppressive conduct ... sufficient to constitute a tort of conversion." 268 S.C. at 386, 234 S.E.2d at 218.
 
 
 15
 Taken together, Zippy Mart and Andrews show that in South Carolina, onerous conduct in refusing to pay money that indisputably belonged to the plaintiff will transform a breach of contract to pay a debt into conversion. For example, in McTeer v. Provident Life & Accident Ins. Co., 712 F.Supp. 512, 518 (D.S.C.1989), the district court held that a disputed claim to an interest payment was not conversion, because there was no "onerous conduct of the sort that would convert [the parties'] relationship into something more than that of debtor-creditor."
 
 
 16
 In this case, Academy's conduct satisfies the onerous conduct requirement of conversion. Academy took affirmative steps to hide the premiums it owed to the plaintiffs. There was also ample evidence that Academy misused the commissions. Guill and Whitley both testified that Academy failed to pay them the commissions they earned, suggesting that Academy reassigned the commissions to other agents. Further, both men testified to the unauthorized use of funds in their escrow accounts and to Academy's failure to provide information about the activity in their accounts.
 
 
 17
 In a related point, Academy argues that the plaintiffs failed to identify specific money to show conversion.
 
 
 18
 Academy is correct that the plaintiffs must be able to identify the money that has been converted. But "there may be conversion of determinate sums even though the specific coin and bills are not identified." Andrews, 265 S.C. at 496-97, 220 S.E.2d at 119. Guill and Whitley identified specific amounts of money that the jury could find belonged to them. Guill and Whitley were independent contractors who sold Academy's insurance in exchange for a specific percentage of the premiums. Although the premiums were collected by Academy, they were allocated upon receipt between Academy and the agents involved. Some of the funds were withheld in "escrow" accounts to offset advances or other debts owed by agents to Academy. In addition, Academy paid interest on these funds, further indicating that the funds were the agents' property.
 
 
 19
 There is no error in the court's charge to the jury. The charge thoroughly set out the law in South Carolina on conversion and distinguished conversion from breach of contract. The court's instructions on conversion, which are set out in the margin,[1] were taken directly from South Carolina case law. The instructions emphasized that to find conversion the jury had to find that the money was identifiable and that Academy had misused the money to the detriment of Guill and Whitley in what amounted to "onerous conduct." Because there is sufficient evidence to support the verdict, we affirm the district court's denial of Academy's motion for judgment n.o.v. on the conversion claim.
 
 III
 
 20
 Academy also appeals the award of punitive damages, which was more than four times the award of compensatory damages. Academy maintains that the award is excessive and a violation of its due process rights.
 
 
 21
 The Supreme Court has recently foreclosed Academy's due process claim. Pacific Mutual Life Ins. Co. v. Haslip, 111 S.Ct. 1032 (1991). The award is not so large that it is excessive as a matter of law. South Carolina courts have upheld punitive damage awards as large as ten times the actual damage award. See Robertson v. State Farm Mut. Auto. Ins. Co., 464 F.Supp. 876, 879 (D.S.C.1979) (compendium of punitive damages awards). Consequently, we will not disturb the punitive damage award in this case.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Money may be the subject of conversion, but an action for conversion will not lie to enforce a mere obligation to pay money. Dawkins v. National Liberty Life Ins. Co., 263 F.Supp. 119 (D.S.C.1967). For money to be the subject of conversion it must be capable of being identified, and there can be conversion of determinate sums even though the specific coin and bills are not identified. Owens v. Andrews Bank & Trust Co., 265 S.C. 490, 220 S.E.2d 116 (1975)
 A person may not recover damages for conversion if the defendant is merely exercising a legal right or if the claim is for the payment of a mere debt. Owens v. Zippy Mart of South Carolina, Inc., 268 S.C. 383, 234 S.E.2d 217 (1977). Thus, the plaintiffs may not recover from the defendant on their conversion claims if you find that there is merely the relationship of debtor and creditor between the plaintiffs and the defendant or if you find that the plaintiffs' claims are for mere breach of contract. Id. The plaintiffs must establish more onerous conduct by the defendant, such as use of the money for its own wrongful purpose to the plaintiffs' detriment. Owens v. Andrews Bank & Trust Co., 265 S.C. 490, 498, 220 S.E.2d 116 (1975). (Citations were omitted when read to the jury).